NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1948
_____

EDWARD BROWN; CAROL BROWN,

Appellants

v.

DARRIN PAUL CWYNAR;
SHENANGO TOWNSHIP POLICE DEPARTMENT;
BRIAN CUSCINO; NEW CASTLE POLICE DEPARTMENT;
SHENANGO TOWNSHIP; CITY OF NEW CASTLE

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
D.C. Civil Action No. 08-cv-1224
(Honorable Joy Flowers Conti)
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 17, 2012

Before: SCIRICA, AMBRO and SMITH, *Circuit Judges*.

(Filed: June 7, 2012)
_____

OPINION OF THE COURT
_____

SCIRICA, *Circuit Judge*.

Edward Brown brought an action under 42 U.S.C. § 1983 against New Castle City

Police Officer Brian Cuscino, contending he used excessive force when he released a

taser gun into Brown's back during an arrest. The court granted summary judgment to Officer Cuscino on the merits, concluding the force he applied was reasonable, as well as on the basis of qualified immunity. We will affirm.

I.

On January 24, 2007, Edward Brown, a seventy-three year old man, drove to the Pearle Vision ("Pearle") eyewear store in Shenango Township, Pennsylvania. Pearle is located in the Lawrence Village Plaza. Brown had an 11:30 a.m. appointment for an eye examination, after which he planned to purchase a pair of prescription eyeglasses. The examination began with a dilation of Brown's eyes. Next, Brown was instructed to wait for twenty minutes. During this time, a receptionist asked Brown for a $25 co-pay. Brown argued he owed only $10 and would not pay until his examination was complete. The receptionist showed Brown where, on his insurance card, it stated his co-pay was $25. She also told him he could wait to pay, but he would not receive his prescription until he did so.

After the eye examination was over, Brown asked for his prescription. The receptionist reiterated she would not release it until Brown rendered the co-pay. Brown refused. Pearle's office manager, Barb Wojtowiz, intervened. She informed Brown that, according to his insurance policy, he was required to submit his co-pays at the time services are provided. Brown responded that Pearle's employees "were making [him] mad" and he only wanted his prescription so he could "get a price on glasses." Wojtowiz instructed a salesperson, Linda Robinson, to quote Brown a price for the glasses. Brown responded, "That's all I wanted, I have to threaten you people to get what I want." As

2

Robinson was assisting Brown, he became agitated. He leaned forward and said, "How would you like if it I spit in your face?" Wojtowiz called 911 and reported a disruptive customer in the store.

In response to the emergency call, the Lawrence Emergency Operations Center sent Officer Cwynar of the Shenango Township Police Department to Pearle. When he arrived, Brown was leaving the store. Employees pointed to Brown through the glass window, indicating he was the subject of the 911 call. Robinson told Officer Cwynar, "That's him, that's him." She also related that Brown had gotten "irate" in the store and threatened to spit in her face.

Officer Cwynar followed Brown as he walked to his vehicle. Multiple times, he called out for Brown to stop. He explained he was there to investigate a disturbance at Pearle and that Brown needed to answer a few questions. Brown proceeded to his car, stating, "I don't have to do what you say, I don't have to talk to you." He opened the driver's side door and got inside. Officer Cwynar walked to the window of the car and demanded that Brown give him the keys. He told Brown he was not free to leave. But Brown refused to comply and reached for the gear shift. At this point, Cwynar called for back-up, pushed Brown across the front seat of the vehicle, and climbed inside. He warned Brown that he would tase him if he did not cooperate. Brown continued to struggle. Officer Cwynar applied a taser gun twice to Brown's left tricep. This did not subdue him and he still resisted handing over the keys.

Trooper William Phillips of the Pennsylvania State Police arrived as Brown and Officer Cwynar were struggling in the front seat of the car. He witnessed Brown

"[t]hrashing about in the car," kicking "[o]ut of control," and refusing to respond to Officer Cwynar's commands. Trooper Phillips attempted unsuccessfully to remove the car keys from Brown's hands and to pull Brown out of the driver's side of the car.

Officer Cuscino, with the New Castle Police Department, was the next to arrive. He had received two calls from the Lawrence Emergency Operations Center reporting, first, that a Shenango Township officer needed assistance at the Lawrence Village Plaza, and second, that the officer was fighting with someone. When Officer Cuscino arrived, he observed that Brown was struggling with officers in a car. As he approached the vehicle, he saw Brown on the ground, lying on top of both his hands. Trooper Phillips told Cuscino "they had a problem in Pearle Vision Center and Officer Cwynar tried to arrest [Brown] and he resisted." Officer Cwynar related he had already tased Brown, but Brown continued to act unruly. The officers stood around Brown and instructed him to release his hands. Officer Cuscino warned him that, if he did not comply, he would be tased. Despite multiple warnings, Brown refused to release his hands. Officer Cuscino then applied a taser gun in drive-stun mode to Brown's upper back. This caused him to let his hands go free, and he was placed in handcuffs and transported to the Shenango police station. The next day, Brown was charged with one count of resisting arrest and two counts of disorderly conduct. Fourteen months later, he entered the Lawrence County Alternative Rehabilitative Disposition ("ARD") program and his charges were dropped.

On September 4, 2008, Brown and his wife, Carol, filed a § 1983 complaint in the District Court for the Western District of Pennsylvania. They named Officers Cwynar and Cuscino, the Shenango Township Police Department, and the New Castle Police

4

Department, as defendants. Brown asserted federal constitutional claims arising under the First, Fourth, and Fifth Amendments, and his wife asserted a state law claim for loss of consortium. In December 2008, Brown amended the complaint to add Shenango Township and New Castle City as defendants. He also added claims for assault and battery.

Officer Cuscino, the New Castle Police Department, and New Castle City filed a joint motion to dismiss. On April 3, 2009, the court granted the motion in part. It dismissed all claims against New Castle Police Department and New Castle City, as well as all claims against Officer Cuscino arising under the First Amendment and the Equal Protection Clause. The court accepted a stipulation of dismissal for Officer Cwynar, the Shenango Township Police Department, and Shenango Township, in light of settlement agreements they entered into with Brown. This left Officer Cuscino as the sole remaining defendant and excessive use of force as the sole remaining federal claim.

On May 10, 2010, Officer Cuscino moved for summary judgment. He claimed he had deployed a reasonable degree of force against Brown in light of the circumstances, and in any case was entitled to qualified immunity. The District Court granted Officer Cuscino's motion on both grounds. It declined to exercise supplemental jurisdiction over the state law claims and dismissed them without prejudice. Brown filed this appeal.

II.

The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367, and 42 U.S.C. § 1983. We have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over a district court's grant of summary judgment, applying the same test

5

as the district court. *Saldana v. Kmart Corp.*, 260 F.3d 228, 231 (3d Cir. 2001). Namely, under Fed. R. Civ. P. 56, we ask whether the "materials in the record, including depositions, documents . . . admissions, interrogatory answers, or other materials" show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) & (c)(1)(A). "Facts that could affect the outcome are 'material facts,' and a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). Like the District Court, we conduct our analysis by "view[ing] the facts in the light most favorable to the nonmoving party and draw[ing] all inferences in that party's favor." *Saldana*, 260 F.3d at 232 (internal quotation marks and citation omitted).

III.

Summary judgment to Officer Cuscino was warranted for two reasons. First, the evidence considered in the light most favorable to Brown shows "no genuine dispute as to any material fact" regarding whether Officer Cuscino used excessive force. The evidence shows the force he deployed was proportionate and reasonable. Second, summary judgment is warranted because Officer Cuscino is entitled to qualified immunity.

As for the merits, a plaintiff may prevail on an excessive force claim if he can show that a seizure occurred and that the seizure "was unreasonable under the circumstances." *Lamont*, 637 F.3d at 183. In *Graham v. Connor*, the Supreme Court instructed that "[d]etermining whether the force used to effect a particular seizure is

6

'reasonable' . . . requires . . . careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." 490 U.S. 386, 396 (1989). The inquiry is an objective one. *Id.* at 397. Additionally, "[r]easonableness is to be evaluated from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Carswell v. Borough of Homestead*, 381 F.3d 235, 240 (3d Cir. 2004) (internal quotation marks and citation omitted).

Brown was "seized" by Officer Cuscino. A seizure occurs when a suspect "submits to the police's show of authority or the police subject him to some degree of physical force." *Abraham v. Raso*, 183 F.3d 279, 291 (3d Cir. 1999). As for whether the seizure was reasonable, the uncontested facts in the record[1] demonstrate that Officer Cuscino possessed the following knowledge at the time he fired the taser: (1) he had been informed by two dispatch calls that a police officer was in need of assistance at Lawrence Village Plaza and was fighting with someone; (2) when he arrived, he personally

---

[1] A word, briefly, about the uncontested facts upon which we base our analysis. The parties filed a Combined Statement of Facts with the District Court in which each set forth a host of contentions, citing to materials in the record. *See* APP 87-102 (Cuscino's statement of facts); 197-201 (Brown's statement of facts). We identify the facts that are undisputed by isolating the contentions in each party's filing that the other did not deny. As the District Court noted, Brown asserted that "most of the facts defendant set forth [in its statement] . . . were 1) not legally essential for the court to rule on the Motion; and 2) immaterial with respect to the Motion as a matter of law." APP 8 n.4. But Brown never denied the veracity of Cuscino's contentions that he received a dispatch call from LEOC to report to the scene, observed Brown struggling with officers in his car, was informed by Officer Cwynar about what had transpired prior to his arrival, and observed Brown resisting arrest on the ground. *See* APP 197-201.

7

observed Brown scuffling with police officers in a car; (3) he was informed by Officer Cwynar that Brown had already been tased but continued to act uncooperatively; and (4) he observed Brown lying on the ground and refusing to release his hands from beneath his body. Together, this information supplied Officer Cuscino a reasonable basis to conclude that Brown would continue to resist arrest and to act belligerently towards the police were he not subdued. Moreover, Officer Cuscino personally warned Brown he would be tased if he did not release his hands, and Brown was undeterred. *Cf. Bryan v. MacPherson*, 630 F.3d 805, 831 (9th Cir. 2010) (noting that an officer's use of force was unreasonable when he did not provide a warning before deploying a taser). The amount of force applied by Officer Cuscino was proportional to the threat he perceived, and was therefore reasonable.

Furthermore, Officer Cuscino is shielded by the doctrine of qualified immunity. Qualified immunity is an affirmative defense available to government officials sued in their personal capacities. The Supreme Court has directed courts to address it at the "earliest possible stage in the litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). For qualified immunity to attach, an official must demonstrate his conduct was objectively reasonable. *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982). There are two prongs to this inquiry: first, whether the plaintiff's constitutional or statutory rights were in fact violated; second, whether it would have been clear to a reasonable officer that the conduct was unlawful in light of "clearly established" law. *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001). If an official can show at least one prong was not met, immunity attaches.

8

*Pearson v. Callahan*, 555 U.S. 223 (2009); *Reedy v. Evanson*, 615 F.3d 197, 224 n.36 (3d Cir. 2010).

Even assuming prong one is satisfied and Brown's Fourth Amendment rights were violated, qualified immunity would attach because not "every 'reasonable official'" in Officer Cuscino's shoes would have understood "beyond debate" that tasering Brown constituted excessive force. *See Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011). At the time of the events in question, multiple courts of appeals had approved of the use of taser guns to subdue individuals who resist arrest or refuse to comply with police orders. *See Draper v. Reynolds*, 369 F.3d 1270, 1278 (11th Cir. 2004) (holding the use of a taser to "effectuate [an] arrest" was reasonable when the individual was "hostile, belligerent, and uncooperative"); *Hinton v. City of Elwood*, 997 F.2d 774, 781 (10th Cir. 1993) (approving the use a stun gun to overcome a suspect's resistance of arrest); *Russo v. City of Cincinnati*, 953 F.2d 1036 (6th Cir. 1992) (holding it was reasonable to use a taser to subdue a paranoid schizophrenic who locked himself in an apartment and disobeyed police orders to open the door and drop his weapons); *cf. Giles v. Kearney*, 571 F.3d 318, 329 (3d Cir. 2009) (holding the use of a capstun was "proportionate" when a prison inmate "repeatedly refus[ed] to obey orders"). Meanwhile, no decision by the Supreme Court, this Circuit, or by a majority of other federal circuits had foreclosed the use of taser guns when suspects resist arrest in an aggressive and combative manner. *See Hoyt v. Cooks*, 672 F.3d 972, 977 (11th Cir. 2012) (holding qualified immunity attached when, in 2007, an officer tased a man who resisted arrest by crawling and thrashing because "no precedent . . . ha[d] staked out a bright line"). A reasonable officer in Cuscino's shoes at

9

the time in question would not have perceived federal law to preclude deploying a taser to effectuate Brown's arrest.

IV.

For the foregoing reasons, we will affirm the judgment of the District Court.