**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 23-3122*

_____

KEAUGNTEY HUGHES; G.B.

v.

NICHOLAS HERBSTER; ABIGAIL ROBERTS,
Appellants

_____

On Appeal from the United States District Court for the
Middle District of Pennsylvania

(D.C. Civil No. 1-20-cv-02204)

District Judge: Honorable Christopher C. Conner

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
September 12, 2024

_____

Before: CHAGARES, *Chief Judge*, ROTH, and RENDELL, *Circuit Judges*

(Filed: November 7, 2024)

_____

O P I N I O N*

_____

**RENDELL**, *Circuit Judge*.

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

This interlocutory appeal stems from the denial of qualified immunity to two Harrisburg police officers involved in a traffic stop that escalated into a physical confrontation. At summary judgment, the District Court concluded that there were genuine disputes of material fact as to plaintiff Keaugntey Hughes's § 1983 claims against the officers. Viewing the facts in the light most favorable to Hughes, the District Court denied qualified immunity to Officers Nicholas Herbster and Abigail Roberts because the facts asserted by Hughes, if proven, would show conduct that violated clearly established law.

Our jurisdiction over this case is circumscribed, but to the extent Herbster and Roberts challenge the District Court's legal holding that their conduct violated clearly established law, we will affirm the District Court's order.

I[1]

A

On May 9, 2019, Keaugntey Hughes was driving, when Harrisburg Police Officer Nicholas Herbster pulled up behind Hughes's car and initiated a traffic stop because her car windows were heavily tinted. The District Court recited the facts of the ensuing incident as follows, after having reviewed, *inter alia*, dashboard camera footage capturing some of the events:

Hughes pulled over, while Herbster parked behind her. Hughes, who had been calling family members to tell them her location and that she was being pulled over, was

---

[1] We write primarily for the parties, and so we recite only the facts necessary to decide the case.

2

talking on her cell phone when Herbster approached the car. After explaining the reason for the stop, Herbster asked for Hughes's license, registration, and proof of insurance. Hughes, still on the phone, handed him her license, but she did not immediately have the other documents. Harrisburg Police Officer Abigail Roberts arrived on the scene at approximately this time.

Herbster told Hughes to end her phone call. Hughes asked him why, later explaining that she wanted to remain on the call with her sister because Herbster was speaking to her aggressively, which frightened her. Herbster reiterated his directions. When Hughes stated that she would end the call to begin recording the traffic stop, Herbster purportedly stated that recording would be unnecessary because he was wearing a body camera. After repeating that Hughes should end the call, Herbster ordered Hughes out of the car.

Here, more factual discrepancies enter the record. Although Roberts remembered hearing Herbster tell Hughes to end the phone call at least four times, she could not remember whether Herbster warned Hughes he would remove her from the car if she did not comply. Hughes, for her part, denied that Herbster gave any such warning. Roberts recalled that Hughes began repeatedly yelling her location, suggesting that Hughes remained on her phone call as the encounter became physical. Hughes believes that she ended the phone call and began recording the traffic stop before the events escalated, or she may have dropped her phone before she could hang up.

Herbster opened Hughes's door, unbuckled her seatbelt, and began pulling her out of the car. Hughes dropped her phone on the passenger side of the car, yelled for Herbster to let

3

her go, and held onto the interior of the car to prevent her removal. Roberts helped Herbster remove Hughes from the car by loosening Hughes's grip on the interior. The District Court found that the dashboard camera footage showed Herbster grabbing Hughes by the back of the neck with his left hand while his right forearm crossed beneath her chin. Hughes fell to her knees outside of the car.

The physical altercation lasted 45 seconds and ended with Hughes pinned down on the ground. To Hughes's recollection, Herbster picked her up and slammed her down. The District Court described the dashboard camera footage showing Hughes's upper body lifting off the ground as Herbster held her from behind, with Hughes's face striking the pavement. The footage also appeared to show Herbster putting much of his weight on Hughes's back while Roberts held Hughes's legs down. Herbster handcuffed Hughes. Hughes claims that she suffered cuts to her knees and lingering aches and pains in her body.

The Commonwealth charged Hughes with disorderly conduct, improper window tinting, and resisting arrest. Ultimately, Hughes pled guilty to the disorderly conduct charge.

B

As relevant here, Hughes brought claims for excessive force under 42 U.S.C. § 1983 against Herbster and for failure to intervene against Roberts in the Middle District of Pennsylvania. Herbster and Roberts filed a motion for summary judgment, which the District Court denied, finding that disputed issues of material fact precluded qualified immunity for either officer. The District Court reasoned that Hughes had asserted a right

4

that is clearly established under Third Circuit law. Herbster and Roberts timely appealed to challenge the denial of their claims of qualified immunity.

II[2]

The District Court identified the following issues of material fact: "whether Hughes ever vocalized her fears about exiting her vehicle in response to Officer Herbster's commands"; "whether she ended her phone call—thereby complying with Officer Herbster's directive—before being removed"; "whether she 'continued to resist' after being pulled into the street"; and "whether Officer Herbster 'dragged' her into the street, 'slammed' her face into the ground, and 'knelt' on her back." Joint Appendix ("J.A.") 12–13. The District Court concluded that, because "[t]he facts underlying the parties' competing accounts color the analysis of Officer Herbster's actions and whether

---

[2] The District Court had subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3). Under the collateral order doctrine, "our jurisdiction over this interlocutory appeal is limited to resolving legal questions, not factual questions." *Rush v. City of Phila.*, 78 F.4th 610, 615 (3d Cir. 2023) (citing *Johnson v. Jones*, 515 U.S. 304, 316–18 (1995)). That is, "we lack jurisdiction to consider whether the district court correctly identified the set of facts that the summary judgment record is sufficient to prove." *Ziccardi v. City of Phila.*, 288 F.3d 57, 61 (3d Cir. 2002). We have jurisdiction only over the legal question of whether Herbster and Roberts violated clearly established law, accepting the District Court's factual definition of their conduct. *Rush v. City of Phila.*, 78 F.4th at 615.

There is a narrow exception to the jurisdictional limitation on our factual review where the record "blatantly contradict[s]" the district court's adopted set of facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007). To the extent Herbster and Hughes seek to invoke this exception, they only summarily argue that "the videos which are part of the record show exactly the level of force used" without a more precise articulation of any alleged blatant contradictions between the District Court's findings of fact and the footage captured by the dashboard camera, and without providing the footage for our review. "Such passing and conclusory statements do not preserve an issue for appeal." *Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 821 n.10 (3d Cir. 2006).

5

they were reasonable under the circumstances[,] [s]ummary judgment is inappropriate while those details remain in dispute." J.A. 13.[3]

Here, we are required to accept the set of facts adopted by the District Court in its ruling on the issue of qualified immunity. *See Schieber v. City of Phila.*, 320 F.3d 409, 415 (3d Cir. 2003). "[H]owever, we may review the District Court's conclusion that the defendants would not be immune from liability if those facts were proved at trial" because that is a purely legal question. *Blaylock v. City of Phila.*, 504 F.3d 405, 409 (3d Cir. 2007). So, our analysis boils down to the following question: if Hughes proves the facts adopted by the District Court, would Herbster and Roberts be entitled to qualified immunity?

### III[4]

On appeal, Herbster and Roberts claim that Herbster's conduct did not violate a clearly established right, and thus they are entitled to qualified immunity for Hughes's § 1983 claims. In excessive force cases where the plaintiff alleges a Fourth Amendment violation, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying

---

[3] As the District Court explained, the dashboard camera footage offered at summary judgment does not resolve these factual disputes because the footage submitted at summary judgment lacks audio, the view of the incident is intermittently obscured by Roberts's torso, and the camera's vantage point does not permit a view inside Hughes's car.

[4] To the extent we have jurisdiction, within the parameters described above, our review of a denial of summary judgment is plenary. *Reilly v. City of Atl. City*, 532 F.3d 216, 223 (3d Cir. 2008). "To warrant summary judgment, the movant must show that, viewing the evidence in the light most favorable to the nonmoving party, 'there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.'" *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 192 (3d Cir. 2015) (quoting Fed. R. Civ. P. 56(a)). A dispute of material fact is "genuine" if a reasonable jury could find in favor of the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989) (citing *Scott v. United States*, 436 U.S. 128, 137–39 (1978); *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). An officer is not qualifiedly immune from suit if (1) the officer violated a constitutional right and (2) the right was clearly established, so that "it would [have been] clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Lamont v. New Jersey*, 637 F.3d 177, 182 (3d Cir. 2011) (quoting *Saucier v. Katz*, 533 U.S. 194, 201–02 (2001)).

Accepting the District Court's articulation of the facts, as we must, we conclude that the District Court did not err in finding Herbster and Roberts unentitled to qualified immunity. The District Court found that clearly established law "forbids law enforcement officers from using excessive force when making an arrest." J.A. 13. Because we agree with that conclusion, we will affirm the District Court's denial of qualified immunity and summary judgment.

A

Accepting the District Court's adoption of the facts and viewing them in the light most favorable to Hughes as the nonmovant, we agree that Herbster's seizure of Hughes was unreasonable. In excessive force cases such as this, we conduct an objective reasonableness inquiry. *Graham*, 490 U.S. at 397. We consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, . . . whether he is actively resisting arrest or attempting to evade arrest by flight," *id.* at 396, "the physical injury to the plaintiff, 'the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action

7

takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time,'" *Rush*, 78 F.4th at 620 (quoting *El v. City of Pittsburgh*, 975 F.3d 327, 336 (3d Cir. 2020)). Because the inquiry on the reasonableness of the use of force in this context is so fact-bound, we have held that it is generally an issue best left to the jury. *Abraham v. Raso*, 183 F.3d 279, 290 (3d Cir. 1999).

Although the District Court did not address each of these factors, it did correctly conclude that a reasonable juror could find that Herbster used excessive force. Based on the recited facts, we agree that a reasonable juror could conclude that Hughes was not suspected of having committed a serious crime, posed no immediate threat to the officers, was not attempting to flee from arrest, and was outnumbered. This is adequate to state a Fourth Amendment violation.

Moreover, the right to be free from unreasonable force in like circumstances is clearly established under Third Circuit law. "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Obvious cases in the excessive force context include those where the statements set forth in *Graham* provide the necessary notice. *See Peroza-Benitez v. Smith*, 994 F.3d 157, 166 (3d Cir. 2021) (citing *Brosseau v. Haugen*, 543 U.S. 194, 198–99 (2004)).

In *Kopec v. Tate*, 361 F.3d 772, 778 (3d Cir. 2004), we held that "the right of an arrestee to be free from the use of excessive force in the course of his handcuffing clearly

was established . . . and that a reasonable officer would have known that employing excessive force in the course of handcuffing would violate the Fourth Amendment." In that case, the plaintiff Michael Kopec trespassed onto a frozen lake. *Id.* at 774. Although he complied with the defendant Officer Tyrone Tate's directions to get off the lake, Kopec refused to provide his personal information to the officer as requested. *Id.* Tate arrested Kopec for disorderly conduct and handcuffed him behind his back. *Id.* The handcuffs caused Kopec to lose feeling in one hand, and Kopec recounted that he repeatedly asked for Kopec to loosen the handcuffs, but Tate only did so after ten minutes. *Id.* We noted that Tate "faced rather benign circumstances" during the arrest, as he "was not, after all, in the midst of a dangerous situation involving a serious crime or armed criminals." *Id.* at 777. We thus concluded, viewing the record in the light most favorable to Kopec, that Tate was not entitled to qualified immunity and reversed the district court's order granting summary judgment. *Id.* at 773–74. Beyond our specific ruling in *Kopec*, we have held that there is a consensus of persuasive authority from our sister Circuits, dating from 1998 to 2012, "that an unarmed individual who is not suspected of a serious crime—including one who is verbally uncooperative or passively resists the police—has the right not to be subjected to physical force such as being grabbed, dragged, or taken down." *El*, 975 F.3d at 340.

The not-precedential excessive force cases relied on by Herbster and Roberts do not persuade us to reach a different conclusion than the District Court, as these cases are distinguishable with factual records showing imminent danger to the arresting officers or

9

community or an intent to flee.[5] Here, again accepting the District Court's articulation of the facts in the light most favorable to Hughes, she did not signal an intent to flee or injure the officers, nor was she suspected of being under the influence of alcohol or drugs or of having firearms in her car.

We thus agree that the right at issue was clearly established, and because a reasonable jury could conclude that Herbster's decision to pull Hughes out of the car and pin her to the ground during the arrest was not objectively reasonable, the District Court did not err in denying him qualified immunity.

B

As to Roberts, Hughes's § 1983 claim against her is a failure to intervene claim, predicated on the allegation that Roberts did not stop Herbster from using excessive force

---

[5] *See Brown v. Cwynar*, 484 F. App'x 676, 677–78 (3d Cir. 2012) (affirming summary judgment on the basis of qualified immunity where plaintiff reached for the gear shift when an officer told the plaintiff he was not free to leave and thrashed around in his car while the officer attempted to detain him); *Wisneski v. Denning*, No. 12-cv-864, 2014 WL 1758118, at *17 (W.D. Pa. Apr. 30, 2014) (concluding that no reasonable jury could find the arresting officers' actions objectively unreasonable where the undisputed evidence showed that the plaintiff was suspected of driving under the influence, had fled the scene of an initial traffic stop while an officer was still partially in the plaintiff's car, led the officers on a car chase, and driven his car into an embankment); *Kircher v. Pa. State Police Dep't*, No. 4:13-cv-02143, 2016 WL 4379143, at *7–11, 20 (M.D. Pa. Aug. 17, 2016) (concluding that summary judgment was warranted on qualified immunity grounds after officers deployed tasers to subdue plaintiff who drove in the middle of the road with headlights off, led police on a car chase instead of pulling over, and revved the car engine when officers entrapped the car); *Rowe v. Municipality of McKeesport Police Dep't*, No. 18-cv-295, 2019 WL 2581612, at *5–6 (W.D. Pa. June 24, 2019) (concluding that removal of plaintiff from a car and throwing plaintiff to the ground was objectively reasonable given that the arresting officer, who was familiar with the plaintiff, had conveyed that his request to search the car was based on a safety concern that the plaintiff possessed guns).

in removing Hughes from the car. "[A] police officer has a duty to take reasonable steps to protect a victim from another officer's use of excessive force . . . if there is a realistic and reasonable opportunity to intervene." *Smith v. Mensinger*, 293 F.3d 641, 650–51 (3d Cir. 2002). As Herbster and Roberts acknowledge, Hughes's failure to intervene claim hinges on whether her excessive force claim succeeds, and on the disputed factual question of whether Roberts had a real opportunity to intervene based on the video footage. *See id.* The District Court thus did not err in denying summary judgment on this issue and qualified immunity to Roberts.

IV

For these reasons, we will affirm the District Court's order and remand for trial.